# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                                             **Case No. 15-CR-78**

**MARVIN SEAY**
        **Defendant.**

## STATEMENT OF REASON MEMORANDUM

Defendant Marvin Seay pleaded guilty to possession of crack cocaine with intent to distribute, 21 U.S.C. § 841(a)(1) & (b)(1)(C), and I set the case for sentencing. In imposing sentence, the district court must first determine the defendant's imprisonment range under the guidelines, then make an individualized assessment of the appropriate sentence based on the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Kappes, 782 F.3d 828, 837 (7th Cir. 2015).

### I. GUIDELINE CALCULATION

Defendant's pre-sentence report ("PSR") set a base offense level of 22 under U.S.S.G. § 2D1.1(c)(9), based on a relevant conduct drug weight of 22-28 grams of cocaine base. However, the PSR further determined that defendant qualified as a career offender based on two prior drug trafficking convictions, triggering a base level of 32 and criminal history category of VI, U.S.S.G. § 4B1.1(b)(3). Following a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, the PSR set a final guideline range of 151-188 months. I adopted these calculations without objection.

## II. SECTION 3553(a)

**A. Sentencing Factors**

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Id.

While the court must as part of its analysis consider the type and range of sentence recommended by the guidelines, it "may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." United States v. Warner, 792

2

F.3d 847, 855 (7th Cir. 2015). The court is also free to reject any guideline on policy grounds, so long as it acts reasonably when using that power. United States v. Corner, 598 F.3d 411, 415 (7th Cir. 2010). "Ultimately, it falls on the district court to weigh and balance the various factors and to 'make an individualized assessment based on the facts presented.'" Warner, 792 F.3d at 855 (quoting Gall v. United States, 552 U.S. 38, 50 (2007)).

**B.   Analysis**

    **1.   The Offense**

This prosecution arose out of the government's investigation of a drug trafficking organization operating in Kenosha and Racine, Wisconsin. Working with a confidential source, an undercover officer was able to make narcotics purchases from one of the participants, who typically acted as a middle man for drug sales. Through wiretaps and other investigative techniques, officers were subsequently able to identify suppliers and others involved in the organization, including this defendant, who worked with one of the mid-level suppliers. The investigation revealed that between January and April 2015, defendant was responsible for the distribution of between 22 grams and 28 grams of cocaine base.

Defendant told the PSR writer his main motivation for committing the offense was financial, although it was in part to support his own drug usage. He stated that he spent the money he received to support his family. His connection to the organization was a friend, who supplied him with drugs.

    **2.   The Defendant**

Defendant was 38 years old, with a relatively brief prior record, but one that nevertheless resulted in a career offender designation. In March 1997, when he was 18, he was charged

3

with possession with intent to deliver cocaine; while on bond in that case, in May 1997, he committed another drug trafficking offense. A state court sentenced him to prison on both cases in August 1997, with consecutive probation. Paroled in 2006, he started probation in 2012. The PSR reported some problems on parole and probation but none sufficiently serious to warrant avoid revocation. His only other conviction was a 2009 bail jumping case, for which he was fined.

The PSR detailed defendant's turbulent childhood, involving drugs and physical abuse. Defendant began affiliating with a street gang at age 13, selling drugs. He moved from Chicago to Kenosha at age 18 and continued selling drugs, leading to his 1997 cases.

Defendant had six children of his own, with nearly $90,000 in support arrears. He married in 2013, and his wife remained supportive.

Correctional needs were somewhat difficult to determine. Defendant had received some mental health treatment in the past but failed to follow through with it. He admitted regular use of marijuana prior to his arrest. He earned a GED in prison in 2005, then took welding courses from 2007 to 2010. However, he had not been able to maintain stable, full-time employment in the community.

### 3. The Sentence

As indicated, the guidelines called for a term of 151-188 months, but that was based on a career offender range that was far greater than necessary. Defendant had two drug trafficking predicates, but he committed both 20 years ago, when he was a teen; both appeared to be low level; and he served the sentences together.[1] This was not a person who had twice

---

[1] Because these two cases were separated by an intervening arrest, they counted separately under U.S.S.G. §§ 4B1.2(c) & 4A1.2(a)(2).

4

been imprisoned, yet returned to trafficking a third time. He also avoided serious new convictions from his release on those 1997 cases until now. Absent the career offender designation, the range would have been 46-57 months.[2] Considering the instant offense conduct, it was serious, but not aggravated by violence, weapons, or threats. The amounts involved were relatively modest. A career offender sentence was greater than needed to provide just punishment.

There was a need to deter and protect the public from further drug trafficking by defendant. He had some vocational skills, yet rather than employ them he had worked sporadically through temp services and dealt drugs to help make ends meet.

Detained on his arrest, defendant had by the time of sentencing spent about 26 months in local jails. Under all the circumstances, I found a sentence of time served, followed by four years of supervised release, sufficient but not greater than necessary to satisfy the purposes of sentencing. I imposed a longer supervision term to ensure that defendant's treatment needs were addressed, that he stayed away from drugs, and that he maintained legitimate employment. This sentence was based on § 3553(a) and would have been the same regardless of the guidelines.

Dated at Milwaukee, Wisconsin, this 23rd day of June, 2017

/s Lynn Adelman
LYNN ADELMAN
District Judge

---

[2] Treating the crack like powder cocaine, as the court may under Kimbrough v. United States, 552 U.S. 85 (2007), it would have been even lower (15-21 months).